**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-CV-361-GCM**

| | ) | |
|---|---|---|
| MARIE TALLEY, | ) | |
|           Plaintiff, | ) | **ORDER** |
| | ) | |
|     v. | ) | |
| | ) | |
| NOVARTIS PHARMACEUTICALS | ) | |
| CORPORATION, | ) | |
|           Defendant. | ) | |

This matter is before the Court on Defendant's Motion to Preclude Plaintiff's Demand for Punitive Damages (the "Motion") [D.I. 46], Plaintiff's Memorandum of Law in Opposition to Novartis Pharmaceuticals Corporation's Motion to Preclude Punitive Damages (hereinafter "Plaintiff's Response") [D.I. 58] and Novartis Pharmaceuticals Corporation's Reply Memorandum in Support of Motion to Preclude Punitive Damages (hereinafter "Defendant's Reply") [D.I. 62]. The Court held oral arguments on the Motion on June 21, 2011. For the reasons laid out below, the Motion is **GRANTED**.

**I. Background**

Plaintiff Marie Talley filed her pharmaceutical products liability lawsuit against Defendant Novartis in the United States District Court for the Middle District of Tennessee. Am. Compl. [D.I. 1]. The case was transferred to this Court pursuant to 28 U.S.C. § 1404(a). [D.I. 8]. Plaintiff claims two Novartis drugs, Aredia and Zometa, which she was prescribed to treat her metastatic breast cancer, caused her to develop osteonecrosis of the jaw ("ONJ"). Am. Compl. ¶ 1. She seeks both compensatory and punitive damages. Defendant Novartis filed the instant motion seeking to apply

1

New Jersey law to the imposition of punitive damages. The Defendant alleges that the corporate conduct Plaintiff seeks to punish with the imposition of punitive damages took place in New Jersey, and thus New Jersey has the strongest interest in seeing its law applied to punitive damages. Motion at 7. The Parties do not dispute that North Carolina law governs liability and compensatory damages. The Parties agree that at all relevant times, the Plaintiff was a resident of North Carolina, was prescribed and received her treatments in North Carolina and that the alleged injury occurred in North Carolina. At the hearing on June 21, 2011, Plaintiff's counsel informed the Court that if New Jersey law was determined to apply, that Plaintiff would not attempt to argue that she was entitled to punitive damages under New Jersey law. Both Parties also agree that Tennessee's conflicts of law rules govern the application of law in this case. Plaintiff's Response at 4; see also, Ferens v. John Deere Co., 494 U.S. 516 (1990); Van Dusen v. Barrack, 376 U.S. 612 (1964).

## II. Choice of Law Analysis

### A. Conflict of Law

The initial question in Tennessee's choice of law analysis is whether there is in fact a conflict of law. See Hataway v. McKinley, 830 S.W.2d 53, 55 (Tenn. 1992). Neither party disputes that the law on punitive damages in New Jersey and in North Carolina differs. In New Jersey, punitive damages are not available against the manufacturer of an FDA approved drug. N.J. Stat. Ann. § 2A:58C-5c. Generally, punitive damages are capped at $350,000 or five times the compensatory damages award. N.J. Stat. Ann. § 2A:15-5.14b. North Carolina caps punitive damages at the greater of three times the compensatory damages or $250,000. N.C. Gen. Stat. Ann. § 1D-25(b). North Carolina requires clear and convincing evidence of fraud, malice or willful or wanton conduct for punitive damages, while New Jersey requires that the Defendant knowingly withheld information

2

from or misrepresented information to the FDA in an FDA products case. N.C. Gen. Stat. Ann. § 1D-15(a)-(b); N.J. Stat. Ann. § 2A:58C-5c.

### B. Restatement (Second) of Conflicts Analysis

Because the law in North Carolina and New Jersey on punitive damages differs, the Court must determine which law applies to punitive damages under Tennessee choice of law principles. Tennessee applies the most significant relationship test from the Restatement (Second) to choice of law issues. Hataway v. McKinley, 830 S.W. 2d 53, 59 (Tenn. 1992). "The Restatement provides that the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Id. Under the "General Principle" of the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflicts § 145(1) (1971) (emphasis added). Contacts to be evaluated in determining which state law should apply to a particular issue are (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Hataway, 830 S.W.2d at 59. Additionally, courts consider (1) the needs of the interstate system; (2) policies of the forum; (3) other states' policies; (4) protection of justified expectations; (5) policies underlying the field of law; (6) certainty, predictability and uniformity of result; and (7) ease of application. Restatement (Second) of Conflicts of Law § 6.

The Restatement also allows for "depecage," which allows for application of different state laws to different issues in the case (for instance, to liability, compensatory damages, and punitive damages). Aguirre Cruz v. Ford Motor Co., 435 F.Supp.2d 701, 704 (W.D. Tenn. 2006); see also,

3

Meng v. Novartis Pharmaceuticals Corp., 2009 WL 4623715 (N.J. Super. L. 2009)(unpublished). Plaintiff attempts to differentiate the Cruz case from the case at bar and argues that depecage should not apply here. In Cruz, a car accident occurred in Mexico involving a vehicle sold in Tennessee and carrying Tennessee residents, but designed in Michigan. Cruz, 435 F.Supp.2d at 702. The district court applied Michigan law to the plaintiff's punitive damages claim, because the court found that "much of the alleged wrongful conduct" at issue in the plaintiff's complaint occurred in Michigan. Id. at 707. Neither party argued that Mexican law, or the place of injury's law, should apply to the claim. Here, Plaintiff argues that because the place of injury, which is the default law applied under the Restatement, was not a consideration in Cruz, the case is not applicable here and depecage should not be allowed. Plaintiff's argument is unsupported by case law and by Cruz itself. Cruz specifically states that "[w]hen the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located.'" Id. at 706 (quoting Keene Corp. v. Ins. Co. of North America, 597 F.Supp. 934, 938 (D.D.C. 1984)). Additionally, both the comments to the Restatement and other cases demonstrate that "courts have long recognized that they are not bound to decide all issues under the local law of a single state." Restatement (Second) of Conflicts of Law § 145 cmt. d; Meng, 2009 WL 4623715 at *2. Compensatory damages and punitive damages can be decided under different laws under the Restatement.

### III. Application of the Substantial Relationship Test to the Facts at Bar

As discussed, the default rule under the Restatement is that the place of injury governs damages. Restatement (Second) of Conflict of Laws § 146. Neither party disputes that the place of alleged injury is North Carolina. Thus, the Defendant must overcome the presumption that North

4

Carolina law applies to punitive damages by demonstrating that New Jersey has a stronger interest in punitive damages. The Defendant points to two recent cases, Meng and Deutsch, for the proposition that New Jersey punitive damages law applies to the case at bar.

New Jersey courts apply the same substantial relationship test as required under Tennessee law. Meng, 2009 WL 4623715 at *2. In Meng, the court found that the place of injury was "simply fortuitous" because it "bears little relation to the occurrence and the parties with respect to the particular issue." Id. (quoting Restatement (Second) of Conflicts of Law § 145 cmt. e). The court found that the conduct at issue for punitive damages (corporate decisions), took place in New Jersey. Id. All plaintiffs, though hailing from different states, chose to file their claims in New Jersey state court. Id. Defendant's principal place of business is New Jersey. Id. Additionally, the court found that punitive damages are not intended to address a plaintiff's reasonable expectations, but are instead intended to deter certain conduct, which occurred in New Jersey. Id.

The court undertook a similar, though more summary, analysis in Deutsch. New York applies the "interests analysis" to choice of law conflicts, under which the "law of the jurisdiction having the greatest interest in the litigation is applied." Deutsch v. Novartis Pharmaceuticals Corp., 723 F.Supp.2d 521, 524 (E.D.N.Y. 2010). There, a New York resident was prescribed Aredia and Zometa in New York, treated in New York, and developed ONJ in New York. Id. The Deutsch court found that punitive damages involve conduct regulation. Id. at 524. The judge found that the conduct the plaintiff was attempting to regulate was corporate conduct that occurred in New Jersey. Id. at 525. The court did not find plaintiff's argument, also put forth in the case at bar, that the corporate decisions were actually made in Switzerland to be persuasive, particularly as plaintiff did not request for Swiss law to be applied (Swiss law does not allow for punitive damages). Id. As a

5

result, the court applied New Jersey law to punitive damages and New York law to the Plaintiff's substantive claims.

Plaintiff cites Montgomery v. Wyeth, in which the Sixth Circuit found that Tennessee law should govern a pharmaceutical case where the plaintiff purchased the drugs in Georgia, but took the drugs and developed her injury in Tennessee. Montgomery v. Wyeth, 580 F.3d 455 (6th Cir. 2009). While somewhat instructive, Montgomery did not involve a separate punitive damages component in the choice of law analysis. Defendant here does not attempt to argue that New Jersey law should be applied to the case as a whole, only the punitive damages portion.

In applying the facts of the instant matter to the substantial relationship test, the Court agrees with the Meng, Deutsch and Cruz courts in finding that the dispositive factor for punitive damages is where the alleged conduct causing the injury occurred. As the Cruz court stated, "[w]hen the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located." Cruz, 435 F.Supp.2d at 706. Both the principal place of business and the place where the alleged misconduct occurred are New Jersey. The Plaintiff has a reasonable expectation, as a North Carolina citizen who suffered alleged injury in North Carolina, to be compensated under North Carolina law. Punitive damages, however, are not intended to compensate the Plaintiff, but to punish the Defendant. See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 538 (1999) (discussing punitive damages in the context of a Title VII dispute); see also Cruz, 435 F.Supp.2d at 706.

The Plaintiff's claim that her lawsuit has significant contacts with North Carolina is beyond dispute. The drugs at issue were sold in North Carolina, the Plaintiff was treated by doctors in North Carolina and took the drugs in North Carolina. The alleged injury unquestionably occurred in North

Carolina. However, as the Deutsch court pointed out, "for purposes of choice of law analysis, the *relevant* contacts are those that relate to the alleged conduct giving rise to their claims for punitive damages." The record demonstrates that the corporate decisions at issue regarding labeling and packaging, occurred in New Jersey. Plaintiff's contention that the relevant decisions were made in Switzerland is unpersuasive based on the record; additionally, Plaintiff does not request that Swiss law be applied.

The additional factors listed in the Restatement § 6 also support application of New Jersey law. New Jersey has made a policy decision on how to impose punitive damages, and has an interest in its citizens being governed by those provisions. Tennessee, as the original forum state, has an interest in having its choice of law analysis applied here. The Defendant, having its principal place of business in New Jersey, has a justified expectation of being subject to New Jersey law for punitive damages. The justified expectations of the Plaintiff are met as she will be compensated under North Carolina law. The basic policy underlying punitive damages is to punish and deter the Defendant, whose conduct occurred in New Jersey, thus the interests of the tort field are enhanced through consistent application of New Jersey law. Certainty, predictability and uniformity of result are furthered because this Court has followed the analysis of the Deutsch and Meng courts, which considered an almost identical issue and reached the same conclusion. The application of New Jersey law also enhances the ease of application of the law to be applied, as the parties have agreed that New Jersey law simply precludes punitive damages.

Because New Jersey holds the most significant interest related to punitive damages in this case, New Jersey law shall apply to punitive damages. As the Plaintiff represented to the Court at the hearing held on June 21, 2011 that she would not attempt to argue that punitive damages are

7

available to her under New Jersey law, no further analysis of the issue under New Jersey law is necessary. Defendant's Motion is **GRANTED** and punitive damages are precluded.

**SO ORDERED**.

Signed: June 27, 2011

Graham C. Mullen
United States District Judge